JAMES S. DOYLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Doyle v. Commissioner
Docket No. 16340-87
United States Tax Court
T.C. Memo 1989-463; 1989 Tax Ct. Memo LEXIS 463; 57 T.C.M. (CCH) 1436; T.C.M. (RIA) 89463; August 29, 1989
Bruce A. Hochstetler, for the petitioner. Steve R. Johnson, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $ 4,352 in petitioner's income tax for 1983, an addition to tax of $ 218 under section 6653(a)(1), and a further addition under section *465 6653(a)(2) equal to 50 percent of the interest due on the deficiency of $ 4,352. [1]
The issues for decision are: (1) Whether petitioner's tax home was in Angola for purposes of the section 911 foreign earned income exclusion; and (2) whether petitioner is liable for the additions to tax provided by section 6653(a)(1) and (2). All of the facts are stipulated. The parties agree that venue for appeal shall be in the United States Court of Appeals for the Eleventh Circuit. During 1983, petitioner was employed by Panelfab International Corporation (Panelfab) and was assigned to work as a carpenter for Cabinda Gulf Oil Company (Gulf Oil) at an oil drilling site in Malongo, Angola. Petitioner was first detailed to Angola on November 18, 1982. Petitioner's work schedule in Angola consisted of six weeks (42 days) on duty and four weeks (28 days) off duty. Petitioner traveled between the United States and Luanda, Angola, by commercial air carrier and between Luanda and the Malongo site, 300 miles away, by helicopter. Petitioner's air travel within *466 Angola and between Angola and the United States was paid by Panelfab. Petitioner was required by the Angolan government to leave Angola during off-duty periods, but was not required to return to the United States. During 1983, petitioner arrived in Angola and left Angola as follows: Arrived in Angola
Left Angola
Days in Angola
January 17   March 3 45 March 28   May 12 45 June 6   July 21 45 August 12   September 28 47 182
In October of 1983, petitioner had surgery on a shoulder which was injured in Angola. The surgery was performed in the United States and petitioner remained in the United States until December of 1984. From October of 1983 to December of 1984, petitioner received workers' compensation, but no compensation from Panelfab. Petitioner and Panelfab had an oral understanding, but no written contract, that he would return to work after recovery from surgery. Petitioner was restored to Panelfab's payroll in December of 1984 and has been employed by Panelfab since then. Petitioner's only connection with Angola was his job with Panelfab. Panelfab's policy was to not have employment contracts with *467 overseas employees and no contract existed between Panelfab and petitioner. Petitioner did not know when his job would end but thought it could last up to ten years. Petitioner intended to return to the United States when his Panelfab job ended and it was his intention to apply for a comparable job nearer the United States if one became available. Petitioner traveled on an American passport and had a work visa issued by Angola. Petitioner's passport was collected by Angolan officials on arrival and was returned on departure at the Luanda airport. Petitioner stayed with 300 foreign workers in a compound approximately two miles long and one mile wide at the Malongo site. Petitioner was provided a mobile home, meals, laundry services, and medical services by Gulf Oil and Panelfab. During 1983, Angola was in a state of civil war. Cuban and Angolan troops, with tanks and artillery, were stationed immediately adjacent to the compound for security reasons. The compound was ringed by security fences, barricades, and a mine field. Angolan boats patrolled the waterfront and a boat was kept moored at all times on the compound's dock should an attack require evacuation of the compound. *468 Petitioner was not permitted to leave the compound by the Angolan government except for travel to: (1) The Luanda airport; (2) Malongo under military escort; and (3) work sites one or two miles from the compound under military escort. Petitioner did not own an automobile in Angola, but he was permitted to use a vehicle owned by his employer within the compound. He did not maintain a bank account in Angola. Although not fluent in Portuguese, he could speak enough Portuguese to communicate with Angolans. Petitioner socialized with some Angolans at the Molongo site. Petitioner would have traveled in Angola and had closer connections with native Angolans had the civil war not been in progress. As a condition of employment, petitioner was required to keep an address and maintain an abode in the United States. During 1983, petitioner leased an apartment located in Miami Beach and had accounts with local utilities. Petitioner's son, Damon Doyle, lived in this apartment and was enrolled in a private school in the Miami area. On his 1983 income tax return, petitioner listed Damon as a dependent child who lived with him. Petitioner had an automobile and a driver's license in Florida. *469 Petitioner paid rent, utilities, and personal expenses, including Damon's expenses, with wages from Panelfab. All mail was delivered to his Miami Beach apartment. Although petitioner sometimes visited Europe, the bulk of his off-duty time was spent in his Miami Beach apartment. While in the United States, petitioner went on outings with his son and visited with many friends he had in the Miami area. Petitioner was paid by Panelfab in U.S. dollars in the United States. He maintained a bank account in Florida and the account was in the name of James Doyle in trust for Damon Doyle. Even if the Angolan civil war had not been in progress, petitioner still would have deposited his wages in a bank account in the United States to provide for his son. Petitioner was told by coworkers that their wages were excluded from taxation under section 911 and they recommended that he contact Acadiana Bookkeeping & Tax Service (Acadiana) of Lafayette, Louisiana, to have his 1983 tax return prepared. Petitioner telephoned Acadiana and provided an Acadiana representative with the dates he was in the United States and informed him that he had an apartment in Florida. No other facts bearing on *470 petitioner's activities in Angola were discussed. The representative told petitioner that he could have a full refund of the taxes withheld from his wages in 1983. Petitioner was informed that the return preparer was a bookkeeper and that Acadiana had won a court case against the Internal Revenue Service. Petitioner was not informed whether the case involved section 911. Petitioner sent Acadiana a signed blank return and a $ 150 check. Acadiana filled in the tax return claiming petitioner was entitled to exclude all $ 26,700 of his wages from taxation because he satisfied the physical presence test of section 911. The return was filed with the Internal Revenue Service in Atlanta, Georgia, without being reviewed by petitioner. Respondent in his notice of deficiency states: You excluded $ 26,700.00 from taxable income in 1983 claiming exclusion as foreign earned income. As you have not verified that you meet the qualifications for including [sic] this income this exclusion is disallowed and your income is increased $ 26,700.00. Respondent also imposed additions to the tax for negligence under section 6653(a)(1) and (2). Section 911(a)(1) permits certain qualified *471 individuals to elect to exclude foreign earned income from their gross income. To qualify for the exclusion a taxpayer is required by section 911(d)(1) to be: an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period. Petitioner concedes that he does not meet the "physical presence test" of section 911(d)(1)(B). Petitioner argues, however, that he maintained a tax home in and was a bona fide resident of Angola during 1983. The term "tax home" is defined in section 911(d)(3), as follows: Tax home. -- The term "tax home" means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for *472 any period for which his abode is within the United States. [Emphasis added.] Respondent concedes that for purposes of section 162(a)(2) petitioner's tax home was in Angola, the principal place of his employment. Nevertheless, petitioner must still establish that his abode was not in the United States. In , affd. without published opinion , this Court considered the meaning of the word "abode" as used in section 911(d)(3) and stated: "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus, "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2). [Fn. ref. omitted.] This definition was expressly adopted by the Court of Appeals in , affg. a Memorandum Opinion of this Court. *473 This Court held, in , that due to the taxpayer's strong economic, familial, and personal ties to Louisiana, his "abode" for purposes of section 911 was in the United States. In this case, petitioner's economic, familial, and personal ties to Florida are substantially similar to those of the taxpayer in Bujol. See . The payment of his wages in U.S. currency, his Florida bank account, the ownership of his car in Florida, and the lease of his apartment in Florida show that his economic ties were to the United States. Similarly, his family and personal ties to the United States are demonstrated by his support of his dependent son, the time he spent with his son while away from Angola, and the bank account, apartment, and school arrangements provided for his son. By contrast, petitioner's contacts with Angola were minimal. Petitioner lived in a compound ringed by security fences, barricades, and a mine field. Petitioner would enter and exit the compound by helicopter from the Luanda airport and was not permitted to leave the compound except with a military escort. All of *474 his living requirements were provided by his employer and he did not maintain a bank account or receive wages in Angola. He did not belong to any local Angolan organization and spoke little of the native language. Based on the record as a whole, we find petitioner's "abode" remained in the United States. Therefore, petitioner is not entitled to the foreign income exclusion under section 911. We need not decide whether he meets the section 911(d)(1)(A) bona fide residence test. Petitioner also argues that respondent improperly imposed additions to tax under section 6653(a)(1) and (2). Section 6653(a)(1) provides for an addition to tax if any part of any underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) provides an addition equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to the negligence or intentional disregard of rules and regulations. The taxpayer has the burden of proof. , affg. and remanding in part a Memorandum Opinion of this Court; , *475 affd. ; . Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. ; At the time petitioner filed his return, he did not have easy access to tax advice. The law was sufficiently unsettled and uncertain so that petitioner, a lay person with no particular tax background or knowledge, cannot be said to have been negligent or to have intentionally disregarded rules and regulations in claiming the section 911 exclusion. We recognize that the return claimed an exclusion based on the physical presence test when such test was not satisfied. However, petitioner had at least an arguable legal position which could be advanced to claim the exclusion. Accordingly, we conclude that the underpayment attributable to the foreign earned income exclusion is not subject to the additions under section 6653(a)(1) and (2). Decision will be entered for the respondent in respect of the deficiency *476 in tax, and for the petitioner in respect of the additions to tax. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, amended and in effect for the year in issue.↩